UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

UNITED STATES OF AMERICA )
)
) 1:23-cr-44
v. )
) Judge Collier/Lee
)
RANDA ALLISON )

## INDICTMENT

### COUNT ONE
### MAIL FRAUD
### (18 U.S.C. § 1341)

**THE GRAND JURY CHARGES THAT:**

**AT ALL TIMES MATERIAL HEREIN:**

    1. The defendant, RANDA ALLISON, at all times relevant to the dates in the Indictment, was a resident of Stevenson and Bridgeport, Alabama.

    2. Facts relating to COVID-19:

        a. In December 2019, a novel coronavirus, SARS-CoV-2 (the "coronavirus"), was first detected in Wuhan, Hubei Province of the People's Republic of China ("PRC"), causing outbreaks of the coronavirus disease COVID-19 that have since spread globally. On January 31, 2020, the Secretary of Health and Human Services ("HHS") declared a national public health emergency under 42 U.S.C. § 247d as a result of the spread of COVID-19 to and within the United States. On March 11, 2020, the Director-General of the World Health Organization ("WHO") characterized COVID-19 as a pandemic. On March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on March 1,

Page **1** of **10**

2020, as a result of the rapid spread of COVID-19 within the United States.

  b. Unemployment Insurance System: The Social Security Act of 1935 initiated the unemployment insurance ("UI") system. UI payments were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own. Beginning in or around March 2020, in response to the COVID-19 pandemic, several federal programs expanded UI eligibility and increased UI benefits. The UI system is administered for the federal government by the state employment offices, and each state administrates a separate unemployment benefits program under guidelines established by federal law.

    1) In the State of Tennessee, the agency responsible for overseeing the disbursement of unemployment insurance is the Tennessee Department of Labor and Workforce Development ("TNLWD") which administers the unemployment benefits system on behalf of the federal government, specifically the United States Department of Labor ("DOL"). The DOL funds all substantive and administrative costs for the TNLWD.

    2) In order to qualify for unemployment insurance, an applicant must complete an online application on TNLWD's website with the applicant's name, date of birth, social security number, and other personal information. The applicant can then file for weekly benefits by certifying online that he/she is unemployed and eligible for benefits.

    3) Other states, such as Pennsylvania and Alabama, likewise provide unemployment insurance to their citizens in a similar fashion. In the State of Pennsylvania, the agency responsible for program oversight is the

Pennsylvania Department of Labor and Industry, (PADOL). In the State of Alabama, the agency responsible for program oversight is the Alabama Department of Labor, (ADOL).

c. Federal Cares Act: On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security (CARES) Act was passed by Congress and signed into law by President Donald J. Trump. The CARES Act included an economic relief package in excess of $2 trillion designed to help the American people during the public health and economic crises related to the pending coronavirus ("COVID-19") pandemic. The CARES Act provides for three new types of unemployment benefits:

1) The Pandemic Unemployment Assistance ("PUA") program is a separate benefit program designed to cover many people who do not qualify for regular unemployment during the COVID-19 pandemic. This includes self-employed individuals, independent contractors, and part-time workers affected by COVID-19.

2) The Pandemic Emergency Unemployment Compensation ("PEUC") program is an extension of regular unemployment benefits that offers unemployment benefits up to thirteen (13) weeks beyond the number of weeks available from regular unemployment. The CARES Act made these PEUC benefits available to the unemployed between March 29, 2020, and December 26, 2020.

3) The Federal Pandemic Unemployment Compensation ("FPUC") program provides an extra $600 per week in addition to regular or PUA unemployment

payments between March 29, 2020 and July 25, 2020. The FPUC is available for everyone on regular unemployment or PUA, except those on training benefits.

d. In the State of Pennsylvania, the PADOL, based in Harrisburg, Pennsylvania, administered the UI program. Those seeking UI benefits submitted online applications. Applicants had to answer specific questions to establish eligibility to receive UI benefits, including their name, Social Security Number (SSN), and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work. The PADOL relied upon the information in the application to determine UI benefits eligibility. Once an application was approved, the PADOL typically distributed state and federal UI benefits electronically to a debit card, which claimants could use to withdraw funds and/or make purchases. These debit cards were sent via the U.S. Postal Service or by a private and commercial interstate carrier to the address the claimant provided. Claimants could activate their debit card via telephone or online.

e. In the State of Alabama, the ADOL, based in Montgomery, Alabama, administered the UI program. Those seeking UI benefits submitted online applications. Applicants had to answer specific questions to establish eligibility to receive UI benefits, including their name, Social Security Number (SSN), and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work. The ADOL relied upon the information in the application to determine UI benefits eligibility. Once an application was approved, the ADOL typically distributed state and federal UI benefits electronically to a debit card, which

Page **4** of **10**

Case 1:23-cr-00044-CLC-SKL   Document 1   Filed 05/23/23   Page 4 of 10   PageID #: 4

claimants could use to withdraw funds and/or make purchases. These debit cards were sent via the U.S. Postal Service or by a private and commercial interstate carrier to the address the claimant provided. Claimants could activate their debit card via telephone or online.

      f. The Tennessee State UI Trust Fund is maintained by the US Treasury at the Federal Reserve Bank. Funds collected for Unemployment Insurance benefits payments are deposited into Bank of America, located in Nashville, TN and then wired to the Bank of America in New York, on behalf of the US Treasury. They are transferred from Bank of America to the Federal Reserve Bank. The Tennessee Department of Labor and Workforce Development (TLWFD) requests funds daily, from the US Treasury, via the Automated Standard Application for Payments (ASAP) system. Upon request, the funds are wired from the Federal Reserve Bank to the TLWFD paying account at First Horizon Bank, located in Nashville, TN. First Horizon Bank then distributes the benefits payments electronically, through direct deposit or to a debit card, as requested by the recipient.

**THE SCHEME TO DEFRAUD**:

3. Beginning in or about June 2020, and continuing until in or about June, 2021, in the Eastern District of Tennessee and elsewhere, the defendant, RANDA ALLISON, aided and abetted by others, devised and intended to devise a scheme and artifice to defraud the government of the United States, governments of various states, and others, and to obtain money and property by means of false and fraudulent pretenses, representations and promises. The scheme and artifice to defraud and to obtain money so devised and intended to be devised by the defendant was in substance as follows:

4. It was part of the scheme to defraud that beginning in or about June 2020, the

Case 1:23-cr-00044-CLC-SKL   Document 1   Filed 05/23/23   Page 5 of 10   PageID #: 5

defendant, RANDA ALLISON, coordinated with others who had knowledge about making false submissions to various states' UI programs and worked with them to create a system to make mass false UI claims to those states.

5. It was further part of the scheme to defraud that between in or about June 2020, and June 2021, the defendant, RANDA ALLISON, obtained the personal information of other individuals with which to make false UI claims in various states. In some instances, the defendant obtained the permission of these individuals to file claims using their information; in other instances she filed the individuals' information without their permission.

6. It was further part of the scheme to defraud that beginning in or about June 2020, the defendant, RANDA ALLISON, aided and abetted by others, utilized a personal computer located in Alabama to submit false UI claims in the defendant, RANDA ALLISON's name to the state of Tennessee.

7. It was further part of the scheme to defraud that between in or about June 2020, and June 2021, the defendant, RANDA ALLISON, in the Eastern District of Tennessee and elsewhere, worked with others to submit false claims. Specifically, the defendant, RANDA ALLISON, aided and abetted by others, utilized a personal cellphone or computer to submit false UI claims in various names to the states of Pennsylvania, Alabama, and Tennessee.

8. It was further part of the scheme to defraud that between in or about June 2020 and June 2021, the defendant, RANDA ALLISON, aided and abetted by others, submitted false UI claims to various states on behalf of individuals she knew did not qualify for such benefits, and caused to be distributed approximately $100,225.00 in debit cards to parties in the Eastern District of Tennessee and elsewhere who were not entitled to

receive the claims.

**THE EXECUTION**:

Beginning on or about June 21, 2020, and continuing until on or about June 25, 2020, in the Eastern District of Tennessee and elsewhere, the defendant, RANDA ALLISON, having devised and intended to devise a scheme to defraud, and for the purpose of obtaining money and property by means of false and fraudulent pretenses, representations and promises, knowingly caused to be delivered by mail and by private and commercial interstate carrier to the place in the Eastern District of Tennessee at which the defendant directed it to be delivered in connection with the following transaction:

| COUNT | DATE | AMOUNT | DESCRIPTION OF MAIL | CONTENT OF MAIL |
|---|---|---|---|---|
| 1 | On or about June 22, 2020 | $23,454.00 | Mailing caused by defendant ALLISON from PADOL to PM in the Eastern District of Tennessee. | Unemployment Insurance Claim Debit Card |

The violation occurred in relation to and involving a benefit authorized, transported, transmitted, transferred, disbursed, and paid in connection with a presidentially declared major disaster and emergency.

All in violation of Title 18 United States Code, Sections 1341 and 2.

Page 7 of 10

# COUNT TWO
# CONSPIRACY TO COMMIT WIRE FRAUD AND MAIL FRAUD
# (18 U.S.C. §§ 1349, 1343 AND 1341)

**THE GRAND JURY FURTHER CHARGES THAT**:

The Grand Jury re-alleges and incorporates by reference the above paragraphs of this Indictment as if fully set forth herein. From in or about June 2020 and continuing until in or about June 2021, in the Eastern District of Tennessee and elsewhere, the defendant, RANDA ALLISON, and others known and unknown to the Grand Jury, did combine, conspire, confederate, and agree with one another to commit the following offenses:

A. They knowingly devised and intended to devise a scheme and artifice to defraud another by means of false and fraudulent pretenses and for obtaining money by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice and attempting to do so, did cause mail matter to be delivered to and from the Eastern District of Tennessee by mail and by private and commercial interstate carrier, in violation of Title 18, United States Code, Section 1341; and

B. They knowingly devised and intended to devise a scheme to defraud, and for the purpose of obtaining money and property by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice and attempting to do so, did transmit and cause to be transmitted to and from the Eastern District of Tennessee by interstate wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice to defraud others, in violation of Title 18, United States Code, Section 1343.

The conspiracy occurred in relation to and involving a benefit authorized, transported,

transmitted, transferred, disbursed, and paid in connection with a presidentially declared major disaster and emergency.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS

1. The allegations contained in Counts One and Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1) and Title 28, United States Code, Section 2461(c).

2. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of an offense in violation of Title 18, United States Code, Sections 1341 and 1349, the defendant, RANDA ALLISON, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The properties to be forfeited include, but are not limited to, the following:

   a. A personal money judgment in the amount of $100,225.00 in favor of the United States and against the defendant, RANDA ALLISON, which represents the proceeds the defendant personally obtained as a result of an offense in violation of Title 18, United States Code, Sections 1341 and 1349.

3. Pursuant to Title 21, United States Code, Section 853(p), the defendant RANDA ALLISON, shall forfeit substitute property, up to the value of the property subject to forfeiture, if by any act or omission of any of the defendants, said property, or any portion thereof:

   a. cannot be located upon the exercise of due diligence;

b. has been transferred, sold to, or deposited with a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property that cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL.

FOREPERSON OF THE GRAND JURY

FRANCIS M. HAMILTON III
United States Attorney

By Steven S. Neff
Assistant United States Attorney